UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re Nuverra Environmental Solutions Securities Litigation ) ) ) ) This Document Relates to: ) ) All Actions. ) ) | Lead Case No. 2:13-cv-01800-JWS<br><br>ORDER AND OPINION<br><br>[Re: Motion at Docket 49] |

## I.  MOTION PRESENTED

At docket 49, defendants Nuverra Environmental Solutions, Inc., Richard J. Heckmann, Mark D. Johnsrud, Jay Parkinson, W. Christopher Chisholm, and Charles R. Gordon move pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing plaintiffs' complaint.  Plaintiffs respond at docket 54.  Defendants filed a reply at docket 56.  Oral argument was requested but would not assist the court.

## II.  BACKGROUND

At docket 43 plaintiffs filed an 83-page, two-count Consolidated Class Action Complaint alleging federal securities law violations.  According to the complaint, Nuverra "is an environmental solutions company focused on serving the needs of exploration and production ('E&P') companies in their pursuit of shale oil and gas

hydraulic fracturing drilling (also known as 'fracking')."[1]  Fracking is a drilling procedure whereby oil and natural gas is harvested from shale rock formations up to thousands of feet underground by pumping large quantities of fluids at high pressure into the targeted rock.[2]  Nuverra "handles the logistics of delivering—and then removing and disposing of—the millions of gallons of water needed to operate each fracking well."[3]

Plaintiffs' complaint centers around two alleged events.  First, plaintiffs allege that Nuverra's truck drivers engaged in an illicit bill padding scheme that artificially boosted Nuverra's earnings.[4]  Second, plaintiffs allege that Nuverra entered into an unprofitable business deal in early 2012 under which it provided its services at a below-market rate to E&P driller EOG Resources, Inc. at the Eagle Ford basin in Texas.[5]  Nuverra hoped that this deal would allow it to "build a book of south Texas E&P customers"[6] but, instead, Nuverra's "profitability immediately tanked."[7]  As discussed in more detail below, plaintiffs allege that defendants misled the investing public by making positive statements about the company without disclosing that Nuverra's profits were being unsustainably propped up by the bill padding scheme and because the EOG Resources deal was actually causing it to lose substantial sums of money at the Eagle Ford site.  Plaintiffs allege that these false statements and misleading omissions artificially inflated the price of Nuverra's publicly traded securities in violation of federal law.

---

[1] Doc. 43 at 2 ¶ 2.

[2] *Id*. at 14 ¶ 46.

[3] *Id*. at 2 ¶ 3.

[4] *Id*. at 19 ¶ 63.

[5] *Id*. at 20 ¶ 67.

[6] *Id*.

[7] *Id*. at 20 ¶ 65.

Defendants now move for dismissal of the complaint in its entirety. Plaintiffs maintain that the complaint is sufficient, but request leave to amend if the court holds otherwise.[8]

### III.  STANDARD OF REVIEW

Rule 12(b)(6), tests the legal sufficiency of a plaintiff's claims. In reviewing such a motion, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."[9]  To be assumed true, the allegations "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."[10]  Dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[11]  "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss."[12]

To avoid dismissal, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face."[13]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[14]  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

---

[8] Doc. 54 at 22.

[9] *Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

[10] *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

[11] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[12] *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[13] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[14] *Id.*

defendant has acted unlawfully."[15]  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[16]  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[17]

## IV.  DISCUSSION

**A.   The Alleged Section 10(b) and Rule 10b-5 Violation**

Count I of plaintiffs' complaint alleges a violation of Section 10(b) of the Securities Exchange Act of 1934.  Section 10(b) "forbids (1) the 'use or employ[ment] . . . of any . . . deceptive device,' (2) 'in connection with the purchase or sale of any security,' and (3) 'in contravention of' Securities and Exchange Commission 'rules and regulations.'"[18]  SEC Rule 10b-5, promulgated under the authority of Section 10(b), specifically forbids, among other things, making untrue statements of material facts or omitting material facts "necessary in order to make the statements made . . . not misleading."[19]  In order to state a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege the following five elements: (1) a material misrepresentation (or omission); (2) scienter; (3) "a connection with the purchase or sale of a security;" (4) transaction

---

[15]*Id.* (citing *Twombly*, 550 U.S. at 556).

[16]*Id.* (quoting *Twombly*, 550 U.S. at 557).

[17]*Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); *see also Starr*, 652 F.3d at 1216.

[18]*Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341 (2005) (quoting 15 U.S.C. § 78j(b)).

[19]17 C.F.R. § 240.10b–5(b) (2014).

-4-

and loss causation; and (5) economic loss.[20]  Defendants' motion to dismiss challenges the first two elements, which must be pled with particularity.[21]

Federal Rule of Civil Procedure 9(b) states that all allegations of fraud or mistake must "state with particularity the circumstances constituting fraud or mistake."  Further, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which Congress enacted "[a]s a check against abusive litigation by private parties,"[22] contains pleading requirements that are more exacting than Rule 9's.[23]  They require plaintiffs to state with particularity not only the allegedly misleading statements and omissions, but also scienter.[24]  With regard to misleading statements, the PSLRA requires the plaintiff's complaint to "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading."[25]  With regard to scienter, the PSLRA requires the plaintiff to state "facts giving rise to a strong inference that the defendant acted with the required state of mind."[26]  The Ninth Circuit has combined the PSLRA's dual pleading requirements into a single inquiry whereby courts determine whether the particular facts in the complaint, taken as a whole, raise a strong inference that the defendants intentionally or with deliberate recklessness made false or misleading statements to investors.[27]

---

[20]*Broudo*, 544 U.S. at 341–42 (citations omitted); *In re Daou Sys., Inc.*, 411 F.3d 1006, 1014 (9th Cir. 2005).

[21]*In re Daou Sys., Inc.*, 411 at 1014.

[22]*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

[23]*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

[24]15 U.S.C. § 78u–4(b)(1), (2).  *See also Tellabs*, 551 U.S. at 313.

[25]15 U.S.C. § 78u–4(b)(1)(B).

[26]*Id*. § 78u–4(b)(2)(A).

[27]*Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001).

Turning to the allegations in plaintiffs' complaint, defendants argue that the complaint fails to state a claim for three reasons: (1) the alleged misrepresentations are not pled with sufficient particularity because plaintiffs do not connect each purported misstatement to a specific reason why the statement was misleading; (2) none of the alleged statements is actionable; and (3) plaintiffs' allegations fail to give rise to a compelling inference of scienter.[28] Pursuant to the Ninth Circuit's guidance, the court will analyze defendants' first and third arguments together.

### 1. Plaintiffs' allegations do not satisfy Rule 9(b)'s or the PSLRA's heightened pleading requirements.

Count I of the complaint contains boilerplate conclusions that defendants made unspecified misleading statements and/or omitted material facts "as specified herein."[29] Section V of the complaint is captioned "Defendants' False and Misleading Statements" and contains 29 pages of allegations sorted into seven subsections that correspond with the seven consecutive financial calendar quarters to which the statements pertain, starting with the Third Quarter ("Q3") of 2011. Each subsection concludes with a paragraph that purports to list all of the reasons why the statements referenced in the subsection were false and misleading when made. These reasons can be boiled down to two: (1) defendants failed to disclose that Eagle Ford's explosive growth in revenue and profitability was unsustainable because it was largely the result of the illicit bill padding scheme;[30] and (2) Nuverra's "sweetheart deal" with EOG caused Nuverra to operate at a loss.[31]

---

[28]Doc. 49 at 9–21.

[29]Doc. 43 at 78 ¶ 217.

[30]Doc. 43 at 31 ¶ 96(a); 35 ¶ 109(a) (verbatim same).

[31]Doc. 43 at 35 ¶ 109(b); 40 ¶ 118(a) (verbatim same); 45 ¶ 133(a) (same); 48 ¶ 144(a) (same); 52 ¶ 153(a) (same); 55 ¶ 161(a) (same).

      **a.    Plaintiffs fail to adequately plead a claim regarding defendants' failure to disclose the alleged bill padding scheme.**

Plaintiffs highlight the complaint's allegations regarding Q3 2011 as an example of how the complaint satisfies the PSLRA's particularity requirements. They explain that paragraphs 84-88 and 92-95 of the complaint "group together Defendants' similar false and misleading statements" related to Q3 2011, each of which involve Nuverra "bragging about Nuverra's significant growth in its core water solutions." Plaintiffs then explain that paragraph 96 of the complaint identifies the reason why each of these statements is false and misleading: Nuverra failed to disclose that its growth was unsustainable because it was based on the "illicit and widespread bill padding scheme"[32] involving employees at E&P companies who colluded with Nuverra drivers to sign the drivers' falsified time sheets.[33] Further, plaintiffs argue that they adequately pleaded the required scienter at various other locations in the complaint.[34]

Paragraphs 84-88 and 92-95 of the complaint allege:

- Statements made by an unidentified author of a Nuverra press release regarding Nuverra's "strong organic growth," its efforts to expand its geographic reach and market share by acquiring permits and wells in additional shale areas, and its addition of cost-saving natural-gas-powered vehicles.
- Defendant Heckmann's statements during the 3Q 2011 conference call that Nuverra had added 50 trucks to its fleet, increased its frac tank inventory by 200 units, and added a disposal well at the Eagle Ford site. Heckmann also stated that Nuverra planned to add two additional

---

[32]Doc. 54 at 6–7.

[33]Doc. 43 at 20 ¶ 63.

[34]Doc. 54 at 16–20.

       disposal wells at the Eagle Ford site by year-end and that Nuverra's "core asset" is its disposal wells.

- Statements made by an unidentified author of Nuverra's 3Q 2011 Form 10-Q that Nuverra's strategy was to continue to build its business "through organic growth and acquisitions," that Nuverra had 450 trucks, 1,100 frac tanks, and 23 disposal wells in the Haynesville and Eagle Ford shale areas, and that Nuverra was in the process of acquiring additional disposal wells.

- Heckmann's Sarbanes-Oxley certification that he had reviewed Nuverra's 3Q 2011 Form 10-Q and it did not contain any untrue statements or omissions of material facts and it fairly presented the financial condition and operating results of the company.

- Heckmann's statements at a November 16, 2011 investment conference that Nuverra had expanded into the Eagle Ford basin and had "70 trucks or so down there." Heckmann also stated that Nuverra expected to add a pipeline at Eagle Ford in the future.

- A statement made by an unidentified speaker at an unidentified date at an unidentified location that Nuverra was investing in a water treatment plant in Eagle Ford and that Nuverra hoped to pipe treated water out to producers to use for fracking purposes.

- Heckmann's statements at a November 30, 2011 energy conference regarding Nuverra's expansion in the Eagle Ford site, including adding wells and a potential pipeline and water treatment facility in the future.

In sum, plaintiffs allege that because defendants did not disclose the unsustainable nature of Nuverra's profits, any discussion of Nuverra's operations at the Eagle Ford site or its plans for future growth necessarily misled investors.

      These allegations fail to state a claim with sufficient particularity because plaintiffs do not link each allegedly misleading statement with a specific reason or

reasons why it is misleading. Instead, plaintiffs list numerous statements, list the omitted information (the bill padding scheme), and then provide the blanket conclusion that the omission rendered all of the statements false or misleading without explaining why. This is insufficient.[35] For each allegedly misleading statement, plaintiffs must plead with particularity the circumstances that made disclosure of the omitted fact necessary in order to make the statement not misleading.[36] Here, plaintiffs do not explicitly state how the omitted information even relates to each alleged statement, let alone why it renders each statement misleading.

Plaintiffs also fail to plead scienter with particularity. Although plaintiffs argue that they have "provided particularized allegations regarding what Defendants knew and when,"[37] they do not allege that any particular defendant knew about the alleged bill padding scheme, or had access to any specific information about it. Alternatively, plaintiffs appear to argue that the individual defendants must have been aware of the bill padding scheme because the Eagle Ford site was so important to the company and the defendants attended regular meetings where that site was discussed. While it is true that in some circumstances knowledge of a material fact may be inferred where the gravity of the fact renders it so obvious that the defendant "must have been aware of it,"[38] plaintiffs have failed to state such circumstances.

Plaintiffs fail to identify who participated in the alleged bill padding scheme, who knew about it, when it began, how long it lasted, to what extent any particular bill was

---

[35] 15 U.S.C. § 78u-4(b)(1)(B); 17 C.F.R. § 240.10b–5(b). *See also May v. Borick*, No. CV 95-8407 LGB, 1997 WL 314166, at *8 (C.D. Cal. Mar. 3, 1997) ("Plaintiff . . . fails to specify, for any individual statement, how and why it was fraudulent or misleading at the time it was made, leaving Defendants and the Court to piece together Plaintiff's claims with regard to particular statements.").

[36] 17 C.F.R. § 240.10b–5(b).

[37] Doc. 54 at 21.

[38] *Zucco Partners*, 552 F.3d at 991; *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 704 (7th Cir. 2008) ("[K]nowledge is inferable from gravity.").

falsified, or to what extent Nuverra's revenues as a whole were enhanced by this practice. The mere allegation that the individual defendants attended meetings where the status of Eagle Ford was discussed, standing alone, does not create a compelling inference that the bill padding scheme was discussed at those meetings or would have been obvious to those in attendance. Similarly, the mere fact that the Eagle Ford project was critically important to the company does not, standing alone, create a compelling inference that a bill padding scheme of unknown magnitude would have been readily apparent to management. Further, when viewed as a whole, the alleged facts do not combine to create a strong inference that defendants knew about the bill padding scheme. Without stating that defendants knew about the scheme or providing any plausible reasons why defendants must have known about it, the only plausible inference is that defendants were unaware of the scheme when the statements were made.[39] Count I of plaintiffs' complaint is dismissed to the extent it relies on defendants' failure to disclose the alleged bill padding scheme.

### b. Plaintiffs fail to adequately plead a claim regarding Nuverra's "sweetheart deal" with EOG that caused Nuverra to operate at a loss.

Plaintiffs also allege that a combined 50 paragraphs of defendants' statements,[40] which related to six financial quarters (Q4 2011 through Q1 2013), were rendered false and misleading because "EOG's sweetheart deal, which accounted for more than half of Nuverra's business at the Eagle Ford site," caused Eagle Ford to operate at a loss each month.[41] As with plaintiffs' allegations regarding the bill padding scheme, these claims fail because they do not link each allegedly misleading statement with a specific reason or reasons why it is false or misleading. Instead, the complaint rattles off one allegedly false-and-misleading statement after another (including, apparently, "We have

---

[39]*Zucco Partners*, 552 F.3d at 991.

[40]Doc. 43 at ¶¶ 97-105, 107-08, 110-16, 119-30, 134-40, 143, 145-49, 152, and 154-59.

[41]*Id*. at ¶¶ 109(a), 118(a), 133(a), 144(a), 153(a), and 161(a).

two permits,"[42] "We hired 175 truck drivers,"[43] and "The Company now has 5 disposal wells"[44]), alleges that Eagle Ford was operating at a loss, and then provides the blanket conclusion that each statement was false and misleading because of that fact without providing an individualized explanation of how or why. This is insufficient.[45] Plaintiffs cannot merely conclude that Eagle Ford's unprofitability rendered every statement false and misleading. For each statement alleged, plaintiffs must specifically state whether Eagle Ford's alleged unprofitability makes that statement false, or whether the omission of that fact makes the statement misleading, and why. For example, if Heckmann's August 6, 2012 statement that "Eagle Ford revenues were up 57% over last quarter"[46] was not true, plaintiffs must say so and state what the truth was. Or, if plaintiffs are alleging that his August 6 statement was misleading by omission, plaintiffs must say so and state why the omitted fact rendered the statement misleading. But plaintiffs cannot do as they have done: group voluminous statements together, state a fact, and then conclude that the fact renders all of the preceding statements false and misleading without explaining why on an individualized basis. Complaints such as these fail to satisfy either Rule 9(b) or the PSLRA's heightened pleading requirements. The remainder of Count I is dismissed.

---

[42]*Id*. at ¶ 100.

[43]*Id*. at ¶ 111.

[44]*Id*. at ¶ 134.

[45]15 U.S.C. § 78u-4(b)(1)(B); 17 C.F.R. § 240.10b–5(b). *See also May v. Borick*, No. CV 95-8407 LGB, 1997 WL 314166, at *8 (C.D. Cal. Mar. 3, 1997) ("Plaintiff . . . fails to specify, for any individual statement, how and why it was fraudulent or misleading at the time it was made, leaving Defendants and the Court to piece together Plaintiff's claims with regard to particular statements.").

[46]*Id*. at ¶ 120.

### 2. The court cannot determine whether the complaint contains any actionable statements or omissions.

Defendants argue that plaintiffs' claim should also be dismissed because plaintiffs fail to allege any actionable statements or omissions. Defendants argue that plaintiffs only allege unactionable statements of historical data, forward-looking statements protected by the PSLRA's safe harbor provision,[47] and corporate puffery. Plaintiffs respond by accusing defendants of "cherry-picking" statements from their complaint and argue that various other statements alleged in their complaint are actionable. The complaint's failure to state with particularity which statements were false or misleading, and why, makes it impossible to effectively analyze and resolve these arguments. It may be that some statements are actionable and others are not. But because the complaint fails to specifically identify which statements among the 29 pages of allegedly false and misleading statements are actionable and which are not, and why, it is impossible to discern the merits of the parties' arguments. This result is one that the PSLRA's heightened pleading requirements are designed to eliminate.

### B. The Alleged Section 20(a) Violation

Finally, defendants argue that because plaintiffs have not stated a claim under Section 10(b) or Rule 10b-5, their Section 20(a) claim necessarily fails. Defendants are correct.[48] Claim II is dismissed.

### V. CONCLUSION

Based on the preceding discussion, defendants' motion to dismiss at docket 49 is **GRANTED**. Plaintiffs' complaint is **DISMISSED** without prejudice.[49] Plaintiffs may file a properly supported motion to amend provided it is filed no more than 21 days from

---

[47] 78 U.S.C. § 78u–5(c).

[48] *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 n.15 (9th Cir. 2002).

[49] *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) ("In dismissing for failure to state a claim, 'a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts.'") (quoting *Cook, Perkiss & Liehe v. N. Cal. Collection Service*, 911 F.2d 242, 247 (9th Cir.1990)).

1  the date of this order.  If a timely motion to amend is not filed, this case will be closed.
2  However, failure to file a timely motion to amend shall not preclude plaintiffs from filing
3  a new action based on a sufficient complaint more than 21 days from the date of this
4  order.
5      DATED this 17th day of November, 2014.

7                              /s/ JOHN W. SEDWICK
                       SENIOR UNITED STATES DISTRICT JUDGE