UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re Nuverra Environmental Solutions Securities Litigation ) ) ) ) This Document Relates to: ) ) All Actions. ) ) | Lead Case No. 2:13-cv-01800-JWS<br><br>ORDER AND OPINION<br><br>[Re: Motion at Docket 62] |

## I.  MOTION PRESENTED

At docket 62 plaintiffs Jewyl A. Stevens, *et al*. (collectively, "plaintiffs") move for leave to amend their complaint pursuant to Federal Rule of Civil Procedure 15(a)(2). Defendants Nuverra Environmental Solutions, Inc., *et al*. (collectively, "Nuverra") oppose at docket 63.  Plaintiffs reply at docket 66.  Oral argument was requested but would not assist the court.

## II.  BACKGROUND

At docket 43 plaintiffs filed an 83-page, two-count Consolidated Class Action Complaint ("Complaint") alleging federal securities law violations.  Count I alleges violations of Section 10(b) of the Securities Exchange Act of 1934 ("the Act") and SEC Rule 10b-5; Count II alleges violations of Section 20(a) of the Act.  According to the complaint, Nuverra "is an environmental solutions company focused on serving the needs of exploration and production ('E&P') companies in their pursuit of shale oil and

gas hydraulic fracturing drilling (also known as 'fracking')."[1]  Fracking is a drilling procedure whereby oil and natural gas is harvested from shale rock formations up to thousands of feet underground by pumping large quantities of fluids at high pressure into the targeted rock.[2]  Nuverra "handles the logistics of delivering—and then removing and disposing of—the millions of gallons of water needed to operate each fracking well."[3]

The Complaint centers around two alleged events.  First, plaintiffs allege that Nuverra's truck drivers engaged in an illicit bill padding scheme that artificially boosted Nuverra's earnings.[4]  Second, plaintiffs allege that Nuverra entered into an unprofitable "sweetheart" business deal in early 2012 under which it provided its services at a below-market rate to E&P driller EOG Resources, Inc. ("EOG") at the Eagle Ford basin in Texas.[5]  Nuverra hoped that this deal would allow it to "build a book of south Texas E&P customers"[6] but, instead, Nuverra's "profitability immediately tanked."[7]  The Complaint alleges that defendants misled the investing public by making positive statements about the company without disclosing that Nuverra's profits were being unsustainably propped up by the bill padding scheme and because the EOG deal was actually causing it to lose substantial sums of money at the Eagle Ford site.  The Complaint also alleges that these false statements and misleading omissions artificially inflated the price of Nuverra's publicly traded securities in violation of federal law.

---

[1] Doc. 43 at 2 ¶ 2.

[2] *Id.* at 14 ¶ 46.

[3] *Id.* at 2 ¶ 3.

[4] *Id.* at 19 ¶ 63.

[5] *Id.* at 20 ¶ 67.

[6] *Id.*

[7] *Id.* at 20 ¶ 65.

At docket 61 the court dismissed the Complaint pursuant to Rule 12(b)(6) for failure to state a claim.  The court held that plaintiffs' Count I violations are not pled with sufficient particularity to comply with Rule 9(b) or the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and that this deficiency also dooms plaintiffs' Count II allegations.  Dismissal was entered without prejudice to plaintiffs' ability to move to amend the Complaint.

Plaintiffs' motion to amend is currently before the court.  Their 77-page proposed Amended Complaint ("PAC") is at docket 62-1, which is accompanied at docket 62-3 by a 28-page appendix of 49 allegedly false and misleading statements made by Nuverra.

### III.  STANDARD OF REVIEW

Rule 15(a) states that if the period for amending a pleading as a matter of course has expired "a party may amend its pleading only with the opposing party's written consent or the court's leave."  "The court should freely give leave when justice so requires."[8]  Rule 15 provides for a very liberal amendment policy.[9]  The decision to permit or deny a motion for leave to amend rests within the sound discretion of the trial court.[10]  In deciding whether to grant leave to amend under Rule 15(a), courts generally consider the following factors: undue delay, bad faith by the moving party, prejudice to the opposing party, futility of amendment, and whether the party has previously amended his pleadings.[11]  "Generally, this determination should be performed with all inferences in favor of granting the motion."[12]  The party opposing amendment bears the

---

[8] Fed. R. Civ. P. 15(a)(2).

[9] *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001).

[10] *See DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 185-86 (9th Cir.1987) (citing *United States v. Webb,* 655 F.2d 977, 979 (9th Cir.1981)).

[11] *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Bonin v. Calderon,* 59 F.3d 815, 845 (9th Cir.1995).

[12] *Griggs v. Pace Am. Group, Inc.,* 170 F.3d 877, 880 (9th Cir.1999) (citing *DCD*

burden of demonstrating a permissible reason for denying the motion to amend.[13] Motions for leave to amend should be denied, however, where they appear futile or legally insufficient.[14]

## IV.  DISCUSSION

The court dismissed the Complaint because it fails to link any of the allegedly misleading statements with a specific reason or reasons why the statements are misleading and insufficiently alleges scienter regarding the bill padding scheme. Plaintiffs argue that the PAC cures these deficiencies in two main ways.  First, the PAC's appendix lists 49 allegedly misleading statements and provides corresponding reasons why the statements are false and/or misleading.  Second, the PAC includes substantive facts from four confidential witnesses that enhance the specificity with which scienter is pled.

In opposition, Nuverra does not dispute that the PAC now links each misleading statement with a purported reason why that statement is misleading.  Instead, Nuverra argues that granting plaintiffs leave to file the PAC would be futile because the new facts from plaintiffs' confidential witnesses are unreliable, the PAC insufficiently pleads scienter, and none of the 49 allegedly misleading statements are actionable.

**A.   Scienter**

With regard to scienter, the PSLRA requires plaintiffs' complaint to state facts "giving rise to a strong inference" that Nuverra acted with the required state of mind.[15] In other words, the particular facts in the complaint, when taken as a whole, must raise

---

*Programs,* 833 F.2d at186).

[13]*DCD Programs,* 833 F.2d at 187; *see Richardson v. United States,* 841 F.2d 993, 999 (9th Cir.1988) (stating that leave to amend should be freely given unless the opposing party makes "an affirmative showing of either prejudice or bad faith").

[14]*Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998).

[15]15 U.S.C. § 78u–4(b)(2)(A).

a strong inference that Nuverra intentionally or with deliberate recklessness made false or misleading statements to investors.[16] For an inference of scienter to be "strong," it must be more than merely reasonable or plausible; a reasonable person must be able to find that the culpable inference is "cogent and at least as compelling as any opposing inference of nonfraudulent intent."[17] "Deliberate recklessness means that the reckless conduct 'reflects some degree of intentional or conscious misconduct.'"[18] For plaintiffs to prove that an individual defendant was deliberately reckless they must show that he "'had reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although he could have done so without extraordinary effort.'"[19]

"In considering whether a strong inference of scienter has been pled, 'the court must consider *all* reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs.'" On one hand, "allegations of defendants' 'hands-on' management style, their interaction with other officers and employees, their attendance at meetings, and their receipt of unspecified weekly or monthly reports" are generally insufficient.[20] But on the other hand, it may be reasonable "to conclude that high-ranking corporate officers have knowledge of the critical core operation of their companies."[21]

Nuverra argues that it would be futile to allow the PAC because plaintiffs have not pled scienter for two reasons. First, Nuverra argues that the facts from confidential

---

[16]*Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001).

[17]*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

[18]*Reese v. Malone*, 747 F.3d 557, 569 (9th Cir. 2014) (quoting *S. Ferry LP, No.2 v. Killinger*, 542 F.3d 776, 782 (9th Cir. 2008)).

[19]*Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 390 (9th Cir. 2010)).

[20]*In re Daou Sys., Inc.*, 411 F.3d 1006, 1022 (9th Cir. 2005).

[21]*Reese*, 747 F.3d at 569.

witnesses contained in the PAC are generally unreliable and implausible, and therefore should be given little or no deference.[22] The flaw with this argument is that Nuverra only specifically challenges one fact attributed to one of plaintiffs' confidential witnesses, "CW3." The allegations attributed to CW3 merely corroborate allegations attributed to plaintiffs' primary confidential witnesses, "CW2."[23] Because Nuverra does not contend that CW2's evidence is unreliable or implausible, Nuverra's argument fails.

Second, Nuverra argues that allowing the PAC would be futile because, even if evidence from plaintiffs' confidential witnesses is considered, the PAC fails to plead a strong inference of scienter with regard to both the bill padding scheme and the EOG deal.

### 1. The bill padding scheme

The court in its previous order found that the Complaint fails to sufficiently allege that any particular defendant knew about the alleged bill padding scheme or had access to any specific information about it. Additionally, the court observed that the Complaint does not plead a strong inference of scienter because it does not identify the magnitude of the scheme or any other facts from which scienter might be inferred. Plaintiffs argue that the PAC cures these deficiencies.[24] The court disagrees.

The PAC alleges that CW2 is a former Nuverra employee who worked as the Business Unit Manager for the Eagle Ford site from March 2012 until June 2013, and in that role oversaw "all aspects of Nuverra's day-to-day operations in Eagle Ford."[25] Around the time that CW2 was promoted to that position, Nuverra entered into the

---

[22] Doc. 63 at 6.

[23] Doc. 62-1 at 24 ¶ 73.

[24] Doc. 62 at 6, 12 (citing the PAC at ¶¶ 71, 93-97); *id*. at 11 (citing the PAC at ¶¶ 42, 71-75, 78-83).

[25] Doc. 62-1 at 14 ¶ 42(b).

sweetheart EOG deal[26] and hired dozens more drivers to service that account.[27] Also at around that time, defendant Charles R. Gordon ("Gordon") handed a directive down to CW2 that changed the drivers' pay from a commission-based program to a flat hourly wage.[28] The PAC alleges that in the five months before this change the drivers were inflating their time sheets with help from E&P company employees.[29] "Earning a commission on every hour billed," the PAC alleges, "Nuverra's drivers learned to abuse the system to pad their hours."[30]

As with the Complaint, the PAC also does not allege direct evidence of scienter—that any individual defendant knew about the alleged scheme. The PAC also fails to allege facts giving rise to a strong inference of scienter. The details of the bill padding scheme remain sketchy. Plaintiffs continue to assert that an unspecified number of unnamed drivers worked out unspecified agreements with an unspecified number of unnamed E&P employees to sign off on time sheets that had been artificially inflated by unspecified amounts, causing Nuverra's aggregate revenues to be artificially inflated by an unspecified amount.[31] These allegations fall far-short of sufficiently alleging that any individual defendant acted with scienter under the PSLRA's heightened pleading requirements.

### 2. The EOG deal

Nuverra argues that it would be futile to allow the PAC because plaintiffs also fail to plead a strong inference of scienter with respect to the EOG deal. The PAC names

---

[26] Doc. 62-1 at 22 ¶ 67.

[27] Doc. 62-1 at 23 ¶ 71.

[28] Doc. 62-1 at 23 ¶ 71.

[29] Doc. 62-1 at 32 ¶ 93-94.

[30] Doc. 62-1 at 32 ¶ 95.

[31] Doc. 62-1 at 32.

five individual defendants: Gordon; W. Christopher Chisholm ("Chisholm"); Mark D. Johnsrud ("Johnsrud"); Richard J. Heckmann ("Heckmann"); and Jay Parkinson ("Parkinson"). Nuverra contends that the PAC pleads scienter based only on these defendants' participation in quarterly meetings and "involvement in other routine aspects of Eagle Ford's operations." This "theory of scienter," Nuverra argues, is inadequate as a matter of law.[32] Nuverra is essentially arguing that regardless whether the individual defendants omitted material facts about the EOG deal, the PAC fails to allege that each individual had reasonable grounds to know the omitted facts and consciously chose not to disclose them.

Nuverra's argument is well-taken with respect to Parkinson, Heckmann, and Johnsrud. Although the PAC alleges that each of these three defendants regularly attended Nuverra's quarterly meetings, it fails to identify any specific meeting that they attended where Eagle Ford's unprofitability was discussed. More importantly, the PAC lacks detailed and specific allegations about what was said at any of these meetings. Instead, the PAC vaguely states that at some unspecified meeting or meetings CW2 "protested the EOG contract and raised concerns" about costs at Eagle Ford. The PAC does not specify what CW2 said or to whom he said it. The PAC also alleges that when Eagle Ford made its presentation at each quarterly meeting "underpricing was always a topic of conversation."[33] The PAC specifies neither the substance of any of these conversations nor the participants.

Plaintiffs make two additional, insufficient attempts to tie Parkinson, Heckmann, and Johnsrud to the omitted information about the EOG deal. First, the PAC states that Johnsrud (along with Gordon) met with EOG management in early 2013.[34] This allegation is unavailing because the PAC does not specify anything that was discussed

---

[32]Doc. 63 at 11.

[33]*Id*. at ¶ 82.

[34]*Id*. at ¶ 83.

at this meeting. Second, the PAC alleges that CW2 "believed that" Heckmann and Johnsrud received monthly reports on Eagle Ford's financial affairs from Chisholm and Gordon,[35] but the PAC does not provide any basis for CW2's belief. Taken as a whole, these allegations are insufficient to give rise to a strong inference that Parkinson, Heckmann, or Johnsrud acted with the required state of mind.

The same is not true about the PAC's allegations against Gordon and Chisholm. The PAC alleges that CW2 "immediately and repeatedly" told Gordon and Chisholm that the "lagging revenues resulting from [the EOG deal's] below-market transport pricing (and even free frac tank rentals) could not sustain the operation's cost structure," and in response Gordon told CW2 to "keep quiet."[36] Plaintiffs also allege that CW2, Gordon, and Chisholm spoke over the telephone two or three times per week on average; that "month after month" CW2 complained to Gordon and Chisholm about the Eagle Ford site's "underpricing issues and mounting financial losses"; and that Gordon and Chisholm each admitted on "one particular call" that the EOG's "below-cost" contract was a mistake.[37] This sufficiently pleads facts supporting Gordon's and Chisholm's knowledge of the allegedly material omitted facts.

In sum, leave to amend is granted with regard to plaintiffs' claims against Gordon and Chisholm. With regard to plaintiffs' claims against any other defendant, leave to amend is denied with prejudice.

**B.    Whether the PAC Alleges Actionable Statements**

Defendants argue that none of the 49 statements listed in plaintiffs' Appendix C is actionable because each is either a statement of accurate historical data, a protected forward-looking statement, or non-actionable puffery. The flaw with this argument is that Nuverra only specifically identifies three statements that it contends are non-

---

[35]*Id.* ¶ 79.

[36]Doc. 62-1 at 26 ¶ 78.

[37]Doc. 62-1 at 26 ¶¶ 78-79.

actionable historical statements, three that are protected forward-looking statements, and three that are puffery—and none of these statements is attributed to either of the two remaining defendants. Thus, even if the statements attributed to Gordon and Chisholm are not actionable, Nuverra has not met its burden of proving as much.

## V.  CONCLUSION

Based on the preceding discussion, plaintiffs' motion for leave to amend their complaint at docket 62 is **GRANTED IN PART AND DENIED IN PART** as follows: Plaintiffs may file an amended complaint that includes claims against Charles R. Gordon and W. Christopher Chisholm that are related to Nuverra's contract with EOG Resources, Inc. In all other respects, plaintiffs' motion is denied with prejudice. Within seven (7) days from the date of this order, plaintiffs shall file a version of the Proposed Amended Complaint that omits all claims against any defendant other than Charles R. Gordon and W. Christopher Chisholm and all claims based on the alleged bill padding scheme. Defendants shall respond to the amended complaint within seven (7) days from the date it is filed and served.

DATED this 12th day of March 2015.

/s/ JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE